## Annie E Seip *v.* William H. Deshler, Appellant.

*Libel—Letter—Charge of insanity.*

A written charge duly published that another person is insane, if untrue
and maliciously made, is libelous and actionable.

In an action for libel, a letter in the handwriting of the defendant, but
not signed, addressed to the plaintiff, stated that plaintiff had received
every dollar due her, and continued, " yes more than you are entitled to
but the misfortune is you (and yours) are too ignorant or insane to know
it. . . . Poor thing, poor thing, what will insanity not accomplish." *Held,*
that the letter, in so far as it involved the charge of insanity, was defama-
tory and actionable.

*Libel—Malice—Evidence.*

In an action to recover damages for libelous matter contained in a let-
ter, the jury will not be confined in their deliberation to the parts declared
on as libelous but the whole letter, and other letters written by defendant to
plaintiff, prior to the libelous letter, not libelous in themselves, but exhibit-
ing ill will towards the plaintiff, are admissible on the questions of malice
and damages.

*Libel—Letter—Publication—Question for jury.*

When a libelous letter is sent to the plaintiff through the mails, the
question of publication is for the jury where the evidence for the plaintiff,
though contradicted, tends to show that the letter was received by an
agent of the plaintiff, authorized to open letters, and was opened and read
by him before it reached the plaintiff.

Argued Feb. 5, 1895. Appeal, No. 31, July T., 1894, by
defendant, from judgment of C. P. Lehigh Co., Nov. T., 1891,
No. 44, on verdict for plaintiff. Before STERRETT, C. J.,
GREEN, WILLIAMS, MITCHELL and DEAN, JJ. Affirmed.

Trespass for libel. Before ALBRIGHT, P. J.

Plaintiff's statement was as follows :

" Annie E. Seip, the plaintiff in this suit, by Joseph Hunter,
her attorney, files this her statement against William H. Desh-
ler, the defendant above named, who was summoned to answer
the plaintiff, the said Annie E. Seip, in an action of trespass.
For that, *whereas*, The said Annie E. Seip is a person of
sound mind, and a good, true, honest and virtuous citizen of
the commonwealth of Pennsylvania, and as such hath always
conducted herself, and, until the committing of the said griev-
ance hereinafter mentioned, was always reputed to be a person

of good fame and credit, and of good sound mind, and free from all taint of insanity, and hath never been guilty, nor until the committing of the said grievance, been suspected to have been guilty of fornication or any other such crime, nor was the plaintiff before suspected of being insane, or having any taint of insanity, by means of which said premises she, the said plaintiff, before the committing of the said grievance, had deservedly obtained the good opinion of all her neighbors and all other persons to whom she was known. Nevertheless, the said defendant, well knowing the premises, but contriving and maliciously intending to vilify and asperse the reputation and character of the said plaintiff, and to bring her into very great infamy and disgrace, and subject her, the said plaintiff, to prosecution and punishment for fornication, on the 31st day of October, A. D. 1890, at Allentown, in said county, did wickedly and maliciously, make, write, and publish, and send through the United States mails, at Allentown, directed to the residence of the said plaintiff, No. ——, Hamilton street, Allentown, in said county, a certain malicious, false and scandalous writing and libel, of and concerning the said plaintiff, said writing and libel being contained in a letter written and published and addressed to the said plaintiff, as aforesaid, by the said defendant, and containing amongst other things certain false, malicious and scandalous matters, according to the terms following, to wit: "Mrs. Annie E. Seip, (meaning the said plaintiff,) you (meaning the said plaintiff) have every dollar due from your (meaning the said plaintiff) much abused sister Emma, (meaning Emma Keiper, sister of the said plaintiff,) either as agent, as executrix, or individually. Yes, more than you (meaning the said plaintiff) are entitled to, but the misfortune is you (meaning the said plaintiff) and yours (meaning the said plaintiff and Henry A. Heckman) are too —— ignorant or insane (meaning and intending said plaintiff, and that plaintiff was insane). You, (meaning the said plaintiff,) Mr. Trexler, (meaning Frank M. Trexler, an attorney at law,) who just lately gave you (meaning the said plaintiff) the "Bounce" may be able to explain, but I (meaning the said defendant) suppose will not, as he (meaning the said Frank M. Trexler), too, has enough. Yes, a superabundance of the H. S. H. Combination. "Poor thing, poor thing," (meaning the said

plaintiff,) what will insanity not accomplish? Emma has her quarterly receipts in full from her sisters. She has your (meaning the said plaintiff) receipts and release as per auditor's report, and no doubt thinks as I (meaning the said defendant) would under similar circumstances, you (meaning the said plaintiff) and yours (meaning the said plaintiff and the said Henry A. Heckman) could now kiss her —— and go to ——. Your (meaning the said plaintiff) action against your sisters and myself (meaning the said defendant) have been so outrageous that they (meaning the said plaintiff's sisters) are now insisting upon your (meaning the said plaintiff) immediate arrest, but I (meaning the said defendant) am urging continued leniency, but so help me, God, I, meaning the said defendant) am at the rope's end. No more forgery, etc., etc. Your learned Friend. Give H. an extra, (meaning and intending the said Henry A. Heckman, of Allentown, Pennsylvania,) thus meaning and intending that the said plaintiff had been criminally intimate with the said Henry A. Heckman, and had committed fornication with him, and that plaintiff should commit the crime of fornication with the said Henry A. Heckman. The said Annie E. Seip in fact saith that she is nowise guilty of fornication, and that she is not insane, but of good sound mind, and that the said William H. Deshler, the defendant, well knew said charges to be false when he made them. By reason of the making and publishing of which said malicious, false and scandalous libel, so as aforesaid published by the said defendant, she, the said plaintiff, is very much injured and damaged in her reputation, and has suffered in character and feelings. Whereupon the said Annie E. Seip hath sustained and claims damages to the amount of ten thousand dollars."

The alleged libelous letter was as follows:

" MRS. ANNIE E. SEIP:—You have every dollar due you from your much abused sister Emma, either as agent, as executrix or individually—yes more than you are entitled to—but the misfortune is you (and yours) are too —— ignorant or insane to know it.

" Your Mr. Trexler, who just lately gave you the *bounce,* may be able to explain, but I suppose will not, as he too has enough, yes, a superbundance of the H. S. H. combination.

"'Poor thing, poor thing,' what will insanity not accomplish!

"Emma has her quarterly receipts in full from her sisters.

"She has your receipts and release as per auditor's report, and no doubt thinks, as I would under similar circumstances, you and yours could now kiss her —— and go to ——. Your actions against your sisters and myself have been so outrageous that they are now insisting upon your immediate arrest, but I am urging continued leniency, but so help me God, I am at the rope's end. No more forgery, &c., &c.

"Your LEARNED FRIEND.

"Give H. an extra."

Under objection and exception the following letters were admitted in evidence. [6, 7]

"ALLENTOWN, PA., March 22d, 1890.

"MRS. ANNIE E. SEIP,

"My endeavor at reconciliation is ended.

"Sisterly love hath deserted you—good common sense you have none—the influence over you is most damnable. After March 25th, 1890, look for no mercy from those who until then are willing to take you by the hand and forgive you once more—take the risk.　　Yours,

"W. H. DESHLER."

"ALLENTOWN, PA., August 9th, 1889.

"MRS. ANNIE E. SEIP,

"I think it would prove wisdom on your part if you would take back the warrant of attorney in the hands of Mr. Trexler—your action will open a fraudulent transaction of which you was the chief—which to you will result in injury—I will most assuredly proceed to the bitter end if you insist on keeping on with your unwise and unprofitable course. By the time you are finished you have nothing left.　　Yours,

"W. H. D.

"Act the sister, before it is too late."

The court charged in part as follows:

"Henry A. Heckman testifies that the plaintiff had a place of business, and where she also resided, on an upper floor of a building in this city, and that Mr. Heckman represented her as her agent in certain mining operations which she was inter-

ested in, in Columbia county, this state, and also in regard to certain matters relating to her deceased mother's estate; that he was her agent; that on the morning of the 1st of November the plaintiff and Mr. Heckman were at her place; that the letter carrier—because in this town now, and at that time it seems the letter carriers' system had been introduced and letters were brought around to people—came to the place, came up the stairs and without ascending the last flight leading to Mrs. Seip's rooms, called out ' mail; ' that Mr. Heckman went and received from the carrier this letter; that believing that it related to certain business of Mrs. Seip, the mining concerns in Columbia county, and he being authorized, as he, and she say, to receive her letters and open them, he opened it and read it before it came to her hands, and that he then called her attention to it. If that is proved, then there was a sufficient publication to entitle the plaintiff to recover so far as publication is concerned. But if the letter came to her hands first, and she opened it and afterwards handed it to Heckman or anybody else, then there was no publication, excepting that which she made herself, and she cannot recover.

" [The defendant asserts that the letter was actually received by Mrs. Seip first, and that the pretense that Mr. Heckman first saw it is unfounded, and that it is set up simply in order to help out the plaintiff's case to show publication, which the defendant says the plaintiff found out subsequently was necessary in order to give her a cause of action.

" The defendant claims that he has proved that at the time in question Mr. Heckman was in Columbia county, in the neighborhood of Espy, which is near Bloomsburg, looking after Mrs. Seip's mine. The letter is postmarked ' October 31st, 1890,' late in the evening, and the theory of the plaintiff is, as well as of the defendant, and it is a fact that the letter came to Mrs. Seip's place on the morning of November 1, 1890, which, it seems, was a Saturday morning. The defendant asks you to find from what he has shown in this reference that Mr. Heckman was in Columbia county on the 31st of October, 1890, and also on the 1st of November following. Upon that question there is evidence on both sides. The plaintiff has called witnesses from whose testimony she claims you can find that the witnesses who were called by the defendant on that point are

mistaken, and that Heckman was not in Columbia county at the time of the reception of this letter; that he had been there on the 4th of July of that year, and then not again until in December of the same year. The defendant also claims to have testimony from which he contends that you can find that if Heckman was in Allentown at all on Saturday, the 1st of November, it was not until in the evening, and that he had returned from Columbia county then, and from all that the defendant has shown in this regard, he claims that he has established that it is not true that Heckman on Saturday morning of November 1st was at Mrs. Seip's place and opened and saw this letter. All that bears upon this question you will consider, and regard the weight of the evidence, and if it is proved that there was publication in the way the plaintiff asserts, that is, that Mr. Heckman saw the letter before it came to Mrs. Seip's hands, then you will say there was publication, and then that requisite of the plaintiff's case to entitle her to recover is made out.

"If you find by the weight of the evidence that Mr. Heckman did not receive the letter first, before Mrs. Seip received it as it came through the mails, then you will say that there was no publication, and then the plaintiff has no cause of action, and you will find for the defendant.] [4]

"According to the definition of a libel, as I have already stated it to you, the making and publication must be malicious, and what is meant by this term 'malicious' or 'malice,' as it affects this case, I will endeavor to explain to you. Malice is popularly understood to mean ill will or spite. As the term is used in law, at least as applicable to this case, it means something more. Spite and ill will are what might be termed positive malice. Malice in contemplation of law is where a person does a wrongful act intentionally. If the letter in suit is what is recognized in law as a libel—and concerning that I will give you instruction presently—then the intentional making and publication of it would be a wrongful act, and if done intentionally—and there is no pretense here that if the defendant did what is charged that he did not do it intentionally—then such intentional doing of the wrongful act is malicious as applicable to a civil action for libel. Is the letter malicious; is the letter actionable; is it a libel? Not every writing which in its terms is uncomplimentary of another, or even abusive of another, even

if it is published, amounts to a libel. The law cannot take notice of every writing of that description so as to give an action for damages. According to certain rules it is ascertained what writings are libelous and what are not libelous.

" Where the terms of a writing are not doubtful but plain it is the province and duty of the court to declare whether the writing is libelous or not, and in an action of this nature, it is the duty of the jury then to be guided by such instruction of the court because it is the announcement of a rule of action —the announcement of a law. The law after all is nothing more than a rule which the people have made for their own government.

" The letter in question as to the matter which you are to decide about is in the opinion of the court of dubious meaning. Just here I will say to you that the claim and assertion on the plaintiff's part that there is a charge of fornication—carnal intercourse between the plaintiff and another—the allegation being that Mr. Heckman was meant—cannot be found from the letter itself. The only allusion that is claimed to be of that nature is in the postscript, and, in the opinion of the court, in order to make out that charge there would have to be added or brought into the letter a word after that last word ' extra ' in place of that dash, which would imply sexual intercourse, and for a court or jury to say that the line means that, would be hunting for a meaning. If the conclusion claimed for by the plaintiff were reached it would be finding a bad meaning where the writing itself does not naturally lead to that conclusion. Therefore we give you positive instruction that so far as the claim on plaintiff's part that there is a charge of sexual commerce is concerned in this letter—fornication—it does not exist and that is out of the case.

" In the letter certain matters are said about the plaintiff which are certainly not complimentary. They relate to disputes about the estate of the deceased mother of the plaintiff. Those matters are not libelous. The only matter which may be libelous is the charge, if it amounts to that, of insanity. There are two allusions in the letter of that nature, that is, which the plaintiff claims are of that nature. They are ambiguous, uncertain and of dubious meaning. As I said to you before, if the meaning were plain and open the court would have to decide

whether those references and statements are libelous or not. But inasmuch as they are not plain, the letter is referred to you, gentlemen of the jury, to find from everything that has a legitimate bearing upon the question whether the meaning is that some party is insane and that the plaintiff, Mrs. Seip, is that party.

" [Where a person covers up his meaning by writing which is ambiguous, uncertain, dubious, but the ordinary experience, the common sense—if such a term may be used—of a juror convinces him that it implies a charge, the juror may conclude that certain things were meant, although they are not expressed in distinct and plain terms. So we say to you here, that if the allusions in this letter mean that the party referred to is of unsound mind—is insane—is deprived of reason—and that Mrs. Seip is the one that is meant to be insane, then we say to you that the letter is libelous and is actionable.] [3] If that is not found, then it is not actionable, and then even if the defendant wrote it and it was published as the plaintiff says, the plaintiff cannot recover because then it is not a libel.

" Insanity, or the condition of one being of unsound mind, is taken notice of by our laws. Where that condition of mind exists the unfortunate party thus afflicted is subject to certain regulations. He or she is liable to have the control of his or her property taken out of his or her hands, and he or she is liable to be taken charge of and confined in an asylum or elsewhere, and for those reasons, outside of the influence that it may have upon the character of the party and the estimation in which she or he is held in the community, I declare to you that in Pennsylvania a written charge that another is insane, if it is maliciously made and is not true, is actionable.

" You have heard the argument for the defendant that the allusions, that is, the words 'insanity' and 'insane' simply mean foolishness or want of judgment on the part of the person alluded to, and that it does not bear the meaning that the party mentioned, or not mentioned but intimated, is insane in fact. If that is all it means, then it does not amount to a charge of insanity.

" It is also argued that you can find that the allegation of insanity does not refer to Mrs. Seip, but that it means somebody else, possibly Mr. Heckman, or some one else, and that

she is simply under the influence of persons who are insane. If it is not proved that she is meant, that it is meant that she is insane, then the matter is not libelous. Words are to be taken in the sense in which the world understands them, that is, the people generally who are familiar with the language in question, and here it is the English language, the letter being in English. Therefore it is referred to you to say, gentlemen, whether these words, which in the opinion of the court are dubious, that is, the words from which the plaintiff alleges that you can find that insanity is charged, actually do mean that, and that Mrs. Seip is the one meant. In short, does the letter, according to the meaning of words as they are usually accepted by people, mean that the writer of the letter asserted or charged that Mrs. Seip, the plaintiff, was insane. If that is established, then we say to you that the letter is libelous, and if it was made by the defendant and was published, then the plaintiff is entitled to recover. If you do not find that the meaning of the letter is, and the words in question here mean, that Mrs. Seip is of unsound mind, then the letter is not libelous, and your verdict must be for the defendant."

Defendant's points were among others as follows :

" 1. Under the evidence the verdict must be for the defendant. *Answer :* Negatived. [1]

" 2. No extrinsic facts having been averred with a colloquium in the plaintiff's statement, there is nothing before the court and jury but the letter set out in the pleadings. Standing alone the court must consider it. As a matter of law the letter as set forth in the pleadings is not libelous. *Answer :* Negatived. [2]

" 4. If the jury pass on the question of damages they cannot consider the whole letter, but only such parts of it as are declared upon as libelous and are submitted to them by the court to pass upon. Those parts of the letter that are not legally libelous can have no bearing on the question of damages. *Answer:* Negatived. [5]

" 8. There is a fatal variance between the paper offered in evidence and the words set forth in the statement; the words ' know it ' are omitted after words ' ignorant or insane.' *Answer :* Negatived. [8]

" 9. No legal publication is averred in the statement. As this is essential to a recovery by the plaintiff, the verdict must be for the defendant. *Answer :* Negatived." [9]

Verdict and judgment for plaintiff for $1,450.    Defendant appealed.

*Errors assigned* were (1–5, 8, 9) above instructions, quoting them; (6, 7) rulings on evidence, quoting the bill of exceptions; (10) refusal to arrest judgment.

*Edward Harvey* and *John Rupp*, for appellant.—When the words are obviously or prima facie defamatory no prefatory averments or innuendoes are necessary.    As a matter of law the court must pass on the words and the jury must accept the interpretation given them: Montague v. Smith, 6 App. Cas. 156; Pittock v. O'Neill, 63 Pa. 253; Collins v. Publishing Co., 152 Pa. 187; Gosling v. Morgan, 32 Pa. 273; Ry. Co. v. Curdy, 114 Pa. 554; Lukenhart v. Byerly, 53 Pa. 418; Hilliard on Torts, 288.

When words per se do not import a crime, a colloquium is necessary to couple them with facts which give a particular hue to the meaning and, by help of innuendoes, designate the persons and things alluded to and disclose the charge of guilt: Lukenhart v. Byerly, 53 Pa. 418; Deford v. Miller, 3 P. & W. 103; Rangler v. Hummel, 37 Pa. 130; Stitzel v. Reynolds, 59 Pa. 488; Gosling v. Morgan, 32 Pa. 273.

As the action was in tort every presumption was in favor of the defendant: Starkie on Evidence, sec. 817; Young v. Edwards, 72 Pa. 257; Battles v. Laudenslager, 84 Pa. 446.

The letter of March 22, 1890, was offered as "bearing on the question of damages."    Was it evidence for that purpose? It was written some months before the date of the alleged libel. It is not in any way related to contents of the principal letter. And it is in no sense a libelous letter.    Such evidence is not admissible where the existence of malice is undisputed: Odgers on Libel, sec. 318, p. 242; Stuart v. Lovell, 2 Stark. 93; Pearce v. Ornsby, I. M. & Rob. 455; Van Derveer v. Sutphin, 5 Ohio, 294.

The law requires that the very words should be set forth and every substantial variance between the words alleged and proved is fatal: Olmstead v. Miller, 1 Wend. 506; Fox v. Vanderbeck, 5 Cow. 513; Parsons v. Bellew, 6 N. H. 269; Yundt v. Yundt, 12 S. & R. 427; Johnstow v. Tait, 6 Binn. 121.

*Isaac Chism, Wm. H. Sowden* with him, for appellee.—The statement is not to be criticised in the view of the law as the law may once have been, but it must be judged only by the requirements of the act of May 25, 1887, P. L. 271.

Any words that denote a publication are sufficient: 1 Chitty's Pleadings, 406; Baldwin v. Elphiston, 2 W. Blackstone, 1037; 1 Hilliard on Torts, 294, sec. 1; Collins v. Despatch Pub. Co., 152 Pa. 187.

The defendant could only take advantage of any defect by demurrer: Newbold v. Pennock, 32 W. N. C. 370. The defects are cured by rule of court: Flisher v. Allen, 141 Pa. 525; Russell v. Archer, 76 Pa. 473; act of June 16, 1836, sec. 21, P. L. 107; Brennan's App., 65 Pa. 16; Shrimpton v. Bertolet, 155 Pa. 638.

But even if the defects in the statement, if any, were not cured by the rule of court, they were cured by the verdict: 2 Brewster's Practice, 1245, sec. 3046; Quick v. Miller, 103 Pa. 67; Weinberger v. Shelly, 6 W. & S. 336; East Union Twp. v. Comrey, 100 Pa. 362; State Ins. Co. v. Todd, 83 Pa. 272; Erie City Iron Works v. Barber, 118 Pa. 6.

The defendant cannot now take advantage of the omission of words in the letter nor could he take advantage of the omission of them at the trial.

The omission of these words worked no hardship or injury to the defendant. He made no objection to the omission of these words at the first trial nor in his motion for arrest of judgment or for a new trial after the first trial.

But the court had the power to permit the statement to be amended by the insertion of the omitted words. As the court had the power to permit the amendment, the court had the power to treat the statement as if it had actually been amended: McMicken v. Com., 58 Pa. 213; Corson v. Hunt, 2 Harris, 510; Robinson v. English, 34 Pa. 324; McLenahan v. Andrews, 135 Pa. 283; Trainor v. R. R. Co., 137 Pa. 148.

The letters of March 22, 1890, and of August 9, 1889, were properly admitted to show malice in aggravation of damages: Elliott v. Boyles, 31 Pa. 65; Townshend on Slander and Libel, sec. 392; 13 Am. & Eng. Ency. of Law, 491; McDermott v. The Evening Journal, 43 N. J. Law Rep. 494.

Evidence of malice prior to the publication of the libel sued

on is admissible for the purpose of swelling the damages: Bruce v. Reed, 104 Pa. 408; Odgers on Libel & Slander, 208.

The learned judge below properly negatived the defendant's fourth point. If the defendant meant to ask the court to charge that the jury could not give damages for the parts of the letter not libelous, he should have stated his meaning clearly: Klumph v. Dunn, 66 Pa. 141; Bell v. Midland R. R., 10 C. B. N. S. 308.

A false charge of insanity is libelous: O'Brien v. Clement, 15 M. & W. 435; Villers v. Monsley, 2 Wils. 403; Watson v. Trask, 6 Ohio, 531; Odgers on Libel & Slander, 19; Barr v. Moore, 87 Pa. 385; Collins v. Dispatch Pub. Co., 152 Pa. 187; Townshend on Slander and Libel, section 177; citing Southwick v. Stevens, 10 Johnson, 443; Morgan v. Lingen, 8 Law Times Rep. N. S. 800; Rex v. Creevy, 1 Maule & Selwyn Rep. 270, Court of King's Bench (1813); Perkins v. Mitchell, 31 Barb. 461; 13 Am. & Eng. Ency. 306, note.

There was a publication: Com. v. Dorrance, 36 L. I. 158; 2 Starkie S. & L. 16; Callan v. Gaylord, 3 Watts, 321; 13 Am. & Eng. Ency. 374; Fox v. Broderick, 14 Jr. C. L. 453; Keene v. Ruff, 1 Clarke, 482.

The question of damages was for the jury. They had the right to determine, under the law and circumstances of the case, the amount: Adams v. Coleridge, 1 Times L. R. 87.

The courts refused to grant a new trial for excessive damages where the amounts were severally $1,000 (Bell v. Howard, 4 Litt. 117); $2,736, charge perjury (Sanders v. Johnson, 6 Blackf. 51); 750 pounds, charge against minister of the gospel (Highmore v. Harrington, 3 C. B. N. S. 142); 350 pounds (Wakley v. Cooke, 4 Ex. 511); $4,000 (Litton v. Young, 2 Metc. [Kentucky] 558); $15,000 (Trumball v. Gibbons, N. Y. Judicial Repository, 1); $5,000, charge want of chastity (Buckley v. Knapp, 48 Mo. 152); $10,000 (Fry v. Bennett, 4 Duer, 247, N. Y.); 1000 pounds (Giroerer v. Hoffman, 15 Up. Can. Q. B. R. 441); 4000 pounds (Roe v. Hawkes, 1 Lev. 97); $3,500 (McDougal v. Sharp, 1 City Hall Recorder, 154); $1,400 (Bodwell v. Osgood, 3 Pick. 379).

PER CURIAM, October 7, 1895:

All that need be said in relation to the first, second, eighth

and ninth specifications of error is that the statement of claim is sufficient both in form and in substance; but, if there be any defect therein, it is only such as was amendable, and has been cured by the verdict, or may be considered amended now. The words of the letter set out in the statement, so far at least as they relate to insanity, are clearly defamatory and actionable.

The whole of the letter referred to and those of August 9th, 1889, and March 22, 1890, received in evidence under exception, were not improper for the consideration of the jury on the questions of malice and damages. The fifth, sixth and seventh speccifications are therefore not sustained.

The case was fairly submitted to the jury with substantially correct and adequate instructions as to the law applicable to the facts which the testimony tended to establish. When the charge is considered as a whole, in connection with the testimony before the jury, there appears to be no error in the portions thereof that are complained of.

There is nothing in any of the specifications that requires extended comment. Neither of them is sustained.

Judgment affirmed.