Timothy **ROBERTS**

v.

**Superintendent Edmond LYONS et al.**

**Civ. A. No. 88–0033.**

United States District Court,
E.D. Pennsylvania.

March 6, 1990.
Order March 7, 1990.
Memorandum and Order March 26, 1990.
Supplemental Memorandum
April 17, 1990.

## MEMORANDUM AND ORDER

EDWIN E. NAYTHONS, United States Magistrate.

In this § 1983 civil rights action brought by an aggrieved prisoner for sexual attacks while an inmate in the city's prisons, plaintiff's counsel has produced more unnecessary sanction motions that has resulted in totally obfuscating the real issues to be resolved.

## BACKGROUND

On January 5, 1988, the plaintiff filed a declaration in support of his request to proceed *in forma pauperis,* and that request was granted on January 21, 1988. On June 20, 1988, the law firm of Deckert, Price and Rhodes was appointed to represent the plaintiff in the above matter. Shortly thereafter, plaintiff's counsel secured an order extending the deadline for the completion of discovery for a period of sixty (60) days which was to be completed by September 7, 1988. The case was placed in the trial pool on October 5, 1988. Plaintiff then secured another extension of the deadline for discovery for a period of ninety (90) days with discovery to be completed by December 7, 1988. Following the filing of a supplemental and amended complaint, the appearance of Kathryn L. Connelly, Esquire, was entered on behalf of the plaintiff, and plaintiff's counsel then filed a subsequent motion to open discovery for the third time, which was granted, extending the period of discovery for an additional 120 days, to be completed by October 20, 1989. Following that extension, there was commenced by plaintiff a series of motions for compelling production of documents and responses to interrogatories as well as numerous motions for sanctions not seen by this United States Magistrate in the many years of service to this Court. On no less than 15 separate occasions plaintiff filed motions for monetary sanctions to be entered against the City of Philadelphia and its Assistant City Solicitor for failing to observe and follow Court Orders by both the Honorable Marvin Katz, United States District Court Judge and this United States Magistrate.

On two separate occasions, I awarded plaintiff's counsel counsel fees in the amount of $750 and $250 against the Assistant City Solicitor for failing to comply with an order of Judge Katz and for violation of Rule 45 of the Federal Rules of Civil Procedure when the Assistant City Solicitor subpoenaed witnesses to his office for the purpose of taking statements without forwarding a notice of deposition to plaintiff's counsel.

Not content with these orders awarding counsel fees, plaintiff's counsel then filed six consolidated motions for sanctions for defense counsel's alleged failure to comply with the Court Order, appropriate deposition conduct, and abuse of discovery. The City responded to these motions and further requested this Court to impose sanctions on plaintiff's counsel under Rule 11 of the Federal Rules of Civil Procedure.

The six separate motions for sanctions deal mainly with the conduct of the Assistant City Solicitor (now removed from the case and replaced by another Assistant City Solicitor) during the discovery process and allege interference with the course of discovery at various depositions of experts, the plaintiff, the Warden of the prison, and allege interference with the course of discovery by allegedly misrepresenting to Reverend Francis Manei, a non-party witness, that he was the witness' legal counsel.

The City denies all of the allegations and is in fact supported by records that it was plaintiff's counsel who sought to harass Dr. Wainright and Warden Gray; and that the Assistant City Solicitor at the depositions did in fact, make proper objections to questions propounded by plaintiff's counsel in view of the fact that there were no stipulations made at the deposition. Furthermore, at a time when plaintiff's counsel insists that the City did not comply with a deposition notice, it was in fact documented that the Assistant City Solicitor was previ-

ously engaged in a Court of Common Pleas Arbitration and that the Arbitration could not be rescheduled. It was further brought out and documented that during the deposition of the plaintiff, counsel for plaintiff became, what the Court would have to consider unrelenting, and in fact the Assistant City Solicitor was obliged to call this Court for direction at which time I entered an order on the record directing Mr. Magaziner to cease his conduct which I considered improper at the time. According to the City Solicitor, in direct disregard of this Court's Order, Mr. Magaziner did in fact continue his conduct and was forced to cease his improper conduct by instructions from the Assistant City Solicitor. With respect to Fr. Francis Manei, it was stated that he was never instructed to refuse to talk to plaintiff's counsel and that to the contrary on February 2, 1990, the Assistant City Solicitor, during a telephone conference, informed Fr. Manei that he could not instruct him not to talk to anyone. He did inform Fr. Manei that it was the Father's prerogative to talk to whom he wished.

## DISCUSSION

■ After much soul searching, it is this Court's opinion that counsel for plaintiff, Ms. Connelly and Mr. Magaziner have abused the discovery process and that their conduct requires immediate judicial intervention and sanctions.

Since all relevant, unprivileged matter reasonably calculated to lead to the discovery of admissible evidence is discoverable, overdiscovery such as this case demonstrates is a common practice. Plaintiff may be conducting a fishing expedition searching for evidence that might support new claims, or may be attempting to force the defendants into a settlement of the matter or simply conducting overdiscovery which is simply a by-product of the hourly fee concept. Whatever the rationale, overdiscovery prolongs litigation. And, while reasonable expense is viewed as an inherent part of the discovery process, the burdensome expense imposed by these counsel engaged in overdiscovery may well force the City of Philadelphia, lacking in sufficient funds, to accept an unfair settlement, or force settlement of an unmeritorious claim.

Discovery in this case has been extensive to the point that I have been obliged to conduct not only conferences in chambers and hearings in open court, but on at least one dozen separate occasions have engaged counsel in telephone conferences that mainly have been initiated by plaintiff's counsel so as to resolve petty questions at various depositions. This activity has occurred over a period of two years. A very complete record has been developed for consideration by the Court of the issues presently before it.

Extensive interrogatories and requests for production have been filed and answered as well as exhaustive depositions of numerous witnesses. In permitting plaintiff to fully discover facts pertinent to the issues presented in this case the Court has liberally applied discovery rules and has consistently ruled in plaintiff's favor. Plaintiff has been given every opportunity to discover relevant facts to support his contention of being forcibly raped because of the inaction and laxity of defendant's prison personnel.

Notwithstanding all of these factors, plaintiff's counsel has ignored the first element of the standard, Rule 26(b)(1)(i) which is designed to minimize redundancy in discovery and encourage attorneys to be sensitive to the comparative costs of different methods of securing information. They have totally failed to reduce repetitiveness and think through their discovery activities in advance so that full utilization could be made of each document request, deposition or set of interrogatories. They have in short, used discovery to wage a war of attrition as a device to coerce the defendants. Moreover, plaintiff's counsel cannot be unaware that with the increasingly complex and numerous cases that comprise the federal docket, courts can no longer indulge the "deliberate tactical intransigence ... responsible for the interminable delays and costs that plague ... law suits ... the detriment of both opponent and non-opponent litigants." *Cine Forty–Second Street*

*Theatre v. Allied Artists*, 602 F.2d 1062, 1067 (2d Cir.1979).

As a rule, the more complex the case, the more severe the discovery abuse. Since complexity is, in general, inversely related to predictability, the action's outcome is less assured, and more resources are committed to the discovery process. Thus, the adversarial machinations surrounding the discovery process are often at odds with the Federal Rules of Civil Procedure's stated purpose of "securing the just, speedy, and inexpensive determination of every action." *Rule 1, Federal Rules of Civil Procedure.* Instead, the procedural manipulation here is designed to frustrate resolution of disputes on their merits and has run rampant. This case is not one of complexity. The only real issues are whether or not the defendants knowingly allowed the plaintiff to be forcibly raped by other inmates and cover-up the act, if it indeed occurred, and further by failing to take appropriate action to relieve the plaintiff from these forcible rapes. Notwithstanding the simplicity of this issue, plaintiff's counsel have completely ignored the Local Rules of the United States District Court for the Eastern District of Pennsylvania, particularly Rule 19(b) which reads:

"(b) No attorney shall ... present to the court vexatious motions or vexatious opposition to motions or shall fail to prepare for presentation to the court *or shall otherwise so multiply the proceedings in a case as to increase unreasonably and vexatiously the costs thereof.* (emphasis added)

(c) Any attorney who fails to comply with (a) or (b) may be disciplined as the court shall deem just."

Additionally, § 1927 of 28 United States Code reads:

"Counsel's liability for excessive costs. Any attorney or other person admitted to conduct cases in any court of the United States ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

Conduct which may subject counsel to being assessed personally includes "an intentional departure from proper conduct," *United States v. Ross*, 535 F.2d 346, 349 (6th Cir.1976); "a serious and steady disregard for the orderly processes of justice," *Kiefel v. Las Vegas Hacienda, Inc.*, 404 F.2d 1163, 1167 (7th Cir.1968), *cert. denied, sub nom Hubbard v. Kiefel*, 395 U.S. 908, 89 S.Ct. 1750, 23 L.Ed.2d 221 (1969); and actions taken in "bad faith". *West Virginia v. Charles Pfizer & Co.*, 440 F.2d 1079 (2d Cir.1971) *cert. denied* 404 U.S. 871, 92 S.Ct. 81, 30 L.Ed.2d 115 (1971). The conduct of plaintiff's counsel in this case is embraced within any of the above definitions of conduct triggering application of § 1927. Nevertheless, it is equally clear that in considering the imposition of a penalty upon attorneys, I note that the Supreme Court has cautioned that like "other sanctions, attorneys' fees certainly should not be assessed lightly or without fair notice and an opportunity for a hearing on the record." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, at 767, 100 S.Ct. 2455, at 2464, 65 L.Ed.2d 488 (1980). Although the Supreme Court has suggested that not every order entered without a preliminary adversary hearing offends due process, I believe that as a general practice a monetary detriment should not be imposed by a court without prior notice and some occasion to respond. In *Eash v. Riggins Trucking, Inc.*, 757 F.2d 557, 571 (3d Cir. 1985), Judge Adams carefully stated:

"These procedural safeguards will ensure that the attorney has an adequate opportunity to explain the conduct deemed deficient—Furthermore, such procedures will afford the judge adequate time to evaluate the propriety of the particular sanction in light of the offending attorneys explanation as well as to consider alternatives ... Moreover, by providing a record, a hearing will facilitate appellate review ... (citations omitted)."

Wherefore, the Court will enter the following Order.

## ORDER

AND NOW, this 7th day of March, 1990, upon consideration of the plaintiff's six consolidated motions for sanctions it is hereby ORDERED that the motions are DENIED.

IT IS FURTHER ORDERED that the motion of the defendants for sanctions under Rule 11 of the Federal Rules of Civil Procedure against the Law Firm of Deckert, Price and Rhodes is DENIED.

AND IT IS FURTHER ORDERED that a hearing is fixed for TUESDAY, MARCH 20TH, 1990 AT 10:30 A.M. in Courtroom 2, Fourth Floor of the United States Courthouse, 601 Market Street, Philadelphia, Pennsylvania, for Kathryn Connelly, Esquire and Fred T. Magaziner, Esquire, to show cause why counsel fees and costs should not be assessed against them pursuant to 28 U.S.C. § 1927, for so multiplying the proceedings in this case as to increase unreasonably and vexatiously the costs thereof.

## MEMORANDUM AND ORDER

This civil rights action was brought by an aggrieved prisoner alleging that he was sexually attacked while an inmate in the City's prisons. Unfortunately, it appears that counsel's efforts have focused on the issue of the opposing counsel's conduct, rather than on the merits of the case.

■ Pursuant to my March 6, 1990 memorandum in the above action, I ordered a hearing for Tuesday, March 20th for the purpose of having Kathryn Connelly, Esquire and Fred T. Magaziner, Esquire show cause why counsel fees and costs should not be assessed against them pursuant to 28 U.S.C. § 1927 for so multiplying the proceedings in this case as to increase unreasonably and vexatiously the costs thereof. This court, sensitive to its heavy responsibility, concludes, after due consideration, that monetary sanctions are not the answer. Rather, the court finds that counsel's unprofessional handling of this lawsuit will be more effectively disciplined pursuant to Local Rule 19 by setting forth the facts and expressing the court's dissatisfaction with the way in which the proceedings have been conducted. *See Hachikian v. Aslanian,* No. 85–264, slip op., 1990 WL 4733 (E.D.N.Y. Jan. 18, 1990); *Fromson v. Citiplate,* 699 F.Supp. 398, 409 (E.D.N.Y. 1988), *aff'd,* 886 F.2d 1300 (Fed.Cir.1989). *See also Pony Express Courier of America v. Pony Express Delivery Service,* 872 F.2d 317 (9th Cir.1989) (court reprimand in Rule 11 context); *United States v. Minisee,* 113 F.R.D. 121 (S.D.Ohio 1986).

## BACKGROUND

A review of the docket entries and motions filed in this case reveals that plaintiff has filed no fewer than twenty-three (23) motions for sanctions against the defendants and defendants' counsel.

On August 2, 1989, after plaintiff responded to defendants' motion for protective order plaintiff countered with a motion for sanctions and to compel discovery. On August 2nd plaintiff filed a motion for sanctions and to compel production of documents and responses to interrogatories, and on August 4th it was ordered that the defendants' motion for protective order was to be denied and that the defendants produce within twenty days of this order all documents requested by plaintiff. After Judge Katz ordered that all discovery should be completed by November 20, 1989, a thirty day extension was sought for the discovery deadline and it was granted on September 13, 1989. On October 17th plaintiff filed a motion to compel attendance of a party at a deposition and again sought sanctions against the defendants. On the 20th of October, plaintiff filed a supplemental memorandum of law in support of his motion to compel attendance of a party at a deposition and again sought sanctions. On November 1st plaintiff again filed a motion to compel attendance and again a motion for sanctions. On November 2, 1989, plaintiff filed a supplemental memorandum in support of its motion to compel attendance of a party at deposition and again for sanctions. On November 6, 1989, plaintiff's motion to compel attendance of a party at deposition and again for sanctions was filed as well as a motion for default judgment against the defendants.

On December 8, 1989, plaintiff filed a motion to compel response to plaintiff's interrogatories and a request for production of documents (3rd set), and on January 4, 1990, plaintiff filed a motion to enforce a court order compelling depositions and for sanctions as well as another memorandum of law. On the 5th of January, plaintiff filed a motion to compel attendance of a party at deposition and for sanctions once again. Again on the 8th of January, 1990, plaintiff filed a motion for sanctions due to deponents third failure to appear at noticed deposition with another memorandum of law. On the same day, plaintiff again filed a motion to enforce the court order to impose sanctions and to compel production of documents with another memorandum of law. On the 11th of January, I entered an order granting plaintiff's motions for sanctions and assessed fees and costs against the defendant City of Philadelphia in the amount of $750 with payment to be made within twenty days.

On the 12th of January, an order was entered that, upon consideration of a letter from counsel, all pending motions were denied as moot and the District Court expected counsel to complete discovery in a *"professional manner"* (emphasis added). Notwithstanding the order of the 12th of January, plaintiff again filed a motion to enforce the court order and again to impose sanctions and to compel discovery with a memorandum of law. On the 5th of February 1990, plaintiff again filed a motion for sanctions [1] for improper subpoenas that were served by the Assistant City Solicitor at which time the appearance of Ronald K. Williams, Esquire was withdrawn and a new appearance of Randall T. Simmons, Esquire entered. Once again the court ordered on the 9th of February 1990 that the Assistant City Solicitor personally pay plaintiff's counsel monetary sanctions in the amount of $250 for the improper service of four subpoenas.

On February 8, 1990, in view of the barrage of discovery motions and motions for sanctions, this court conducted a conference attended by Mr. Simmons and Ms. Connolly in an effort to resolve all of the outstanding discovery problems. At that conference, both parties' counsel acknowledged that there had been much unnecessary delay in the discovery of this case. At that time, this court expressed its desire that the seemingly endless litany of discovery disputes between counsel for plaintiff and counsel for the City of Philadelphia would finally come to a halt. After the court assessed the $250 fine upon the Assistant City Solicitor for service of improper subpoenas, it was the understanding of this court that the matter involving the discovery issues had been settled. After the conference with counsel from both parties, it was also the understanding of this court that the parties would at least attempt to resolve any further discovery disputes between themselves with a view toward getting this case "back on the track" so that discovery could be effectively completed with a focus on the merits of the case.[2]

Nevertheless, no fewer than five days had passed before plaintiff filed *six* consolidated motions for sanctions on February 13, 1990 for counsel's failure to comply with the court order and appropriate deposition conduct and for abuse of the discovery process, even though plaintiff's counsel later conceded that Mr. Simmons had in no way violated any Federal Rule of Civil Procedure, nor had he demonstrated bad faith in discovery compliance. Despite the fact that this court had already held a

1. In this consolidated motion, plaintiff requested this Court to impose *five* separate sanctions upon both the City of Philadelphia and personally against the Assistant City Solicitor. *See,* Plaintiff's Motion for Sanctions for Improper Service of Subpoenas, at 2–3.

2. Pursuant to Rule 24(f), "[n]o motion or other application pursuant to the Federal Rules of Civil Procedure governing discovery ... shall be made unless it contains a certification of counsel that the parties, after reasonable effort, are unable to resolve the dispute." Thus, properly utilized Rule 24(f) promotes judicial economy while at the same time reducing litigants' expenses incurred for attorneys' time in briefing issues and in preparing and presenting pleadings. *Cf. Dondi Properties Corporation v. Commerce Savings & Loan Assoc.,* 121 F.R.D. 284 (N.D.Tex.1988).

conference and a hearing on sanctions and had awarded plaintiff's counsel $250 against the Assistant City Solicitor, as well as $750 against the defendant City of Philadelphia, plaintiff's counsel was apparently not content with this award and requested further sanctions.

Without giving any indication that any attempt was made by counsel to resolve the disputes at issue, plaintiff's counsel requested this court to award six *separate* awards for six different incidents.[3] The City responded to these motions and further requested this court to impose sanctions on plaintiff's counsel under Rule 11 of the Federal Rules of Civil Procedure.

On March 7, 1990, this court ordered that the defendant's motion for sanctions under Rule 11 against the Law Firm of Dechert, Price and Rhoads be denied. This court further ordered that a hearing be held on March 20, 1990 for plaintiff's counsel to show cause why counsel fees and costs should not be assessed against them pursuant to 28 U.S.C. § 1927,[4] for so multiplying the proceedings in this case as to increase unreasonably and vexatiously the costs thereof.

At plaintiff's counsel's request, a conference was held on March 15, 1990 prior to the ordered hearing.[5] At that conference, Mr. Gerber expressed his concern that action taken by the court in the present matter could have a "chilling effect" in that it may discourage law firms from taking pro bono cases in the future. The Assistant City Solicitor conveyed his extreme displeasure with plaintiff's counsel's conduct in the present case and expressed his desire to go forward with the scheduled hearing on the matter.

At the March 20, 1990 hearing, I was informed by counsel for the respondents, Connolly and Magaziner, as well as Assistant City Solicitor Day, that they had entered into discussions and would submit to me a letter stating that the City was willing to waive all counsel fees and costs under § 1927. Immediately thereafter, a letter was delivered to the court from City Solicitor Charisse R. Lillie with copies to Robert C. Heim, Esquire and Randall Simmons, Esquire, Assistant City Solicitor. This letter indicated that City Solicitor Lillie "met with Robert C. Heim, Esquire to discuss this case." Solicitor Lillie indicated that the discussion was helpful and that the Solicitor was optimistic that the litigation in the future would be handled in a professional and "appropriate manner". Whereupon, the City indicated that it did not wish to proceed with the hearing and that it did not believe that plaintiff's counsel acted in "bad faith".

## DISCUSSION

With the desire to respect the wishes and manifestations of counsel, this court vacates its order to show cause as it is quite obvious that there has been a complete "turnabout" on the part of the City Solicitor's Office since it no longer desires to be compensated for the violations of § 1927 by plaintiff's counsel as indicated by this court in its earlier memorandum.

Nevertheless, this United States Magistrate finds that there has been on the part

3. Additionally, on March 9, 1990, plaintiff's counsel filed their "Consolidated *Motions to Impose Sanctions,* to Compel Responses to Interrogatories and Requests for Production of Documents (Set V), and to Enforce Court Orders Compelling Responses to Interrogatories and Production of Documents (Sets II and III)." (emphasis added). However, in a letter received by this Court after ordering the March 20, 1990 hearing, plaintiff's counsel stated the following: "the presently pending Motion to Compel is not a motion for sanctions directed toward the defendants. Since there may have been some confusion in this regard, we hereby delete the paragraph in the motion which seeks to have fees and costs of the motion reim-

bursed." *See,* letter to this Court from Robert C. Heim, Esquire.

4. 28 U.S.C. § 1927 provides that:
 Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

5. Gordon W. Gerber, Esquire represented plaintiff's counsel at the March 15, 1990 conference and at the hearing held on March 20, 1990.

of Robert Heim, Esquire, Fred T. Magaziner, Esquire and Kathryn Connolly, Esquire, a clear and conscious violation of Rule 19(b) of the Local Rules for the Eastern District of Pennsylvania. Local Rule 19 provides in pertinent part:

(b) No attorney shall ... present to the court vexatious motions or vexatious opposition to motions or shall fail to prepare for presentation to the court *or shall otherwise so multiply the proceedings in a case as to increase unreasonably and vexatiously the costs thereof.*

(c) Any attorney who fails to comply with (a) or (b) may be disciplined as the court shall deem just. (emphasis added).

While no counsel fees or costs will be imposed upon these attorneys, nevertheless it is incumbent upon this Judicial Officer that some just discipline be administered not only for the past conduct of counsel but as a deterrent for future conduct which may occur in this case.[6] This court is sworn to support, defend and maintain the dignity and integrity of all the laws of the United States as well as all rules enacted pursuant thereto. To abandon my sworn obligation to carry out these duties and not to impose a public reprimand of all of plaintiff's counsel herein involved would make this court a passive participant in what this court considers to be unconscionable behavior on the part of plaintiff's counsel in filing twenty-three motions for sanctions, and for compelling the defendants to meet certain discovery issues that had no effect other than to unreasonably increase the costs thereof and harass the named defendants as well as the Office of the City Solicitor of Philadelphia.

The inherent power of a court to manage its affairs necessarily includes the authority to impose reasonable appropriate sanctions upon errant lawyers practicing before it. *Nasco, Inc. v. Calcasieu Television and Radio*, 124 F.R.D. 120, 140 (W.D.La.1989) (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980)). As the court in *Woodham v. American Cystoscope Co.*, 335 F.2d 551 (5th Cir.1964), stated:

... alternative modes of discipline against the attorney might include: (1) *a reprimand by the court,* (2) a finding of contempt, or (3) a prohibition against practicing for a limited time before the court whose order was neglected or disregarded. It seems fairly clear that the judicious use of such measures would tend to promote attorney compliance in the first instance.

*Id.* at 557 (quoting Sanctions at Pre–Trial Stages, 72 Yale L. Jour. 819, 830). *See Hachikian, supra; Nasco, supra,* at 140; *Fromson, supra,* at 409; *Flaksa v. Little River Marine Construction Co.*, 389 F.2d 885, 888–89 (5th Cir.1968), *cert. denied,* 392 U.S. 928, 88 S.Ct. 2287, 20 L.Ed.2d 1387 (1968). *See also Pony Express Delivery Service, supra; Minisee, supra.*

In the case at bar, plaintiff's counsel have not complied with their obligations under Local Rule 19(b).[7] As the Honorable Norma L. Shapiro, District Judge in the United States District Court for the Eastern District of Pennsylvania stated in *Pioneer Liemel Fabrics Inc. v. Paul Rothman Industries, Ltd.*, No. 87–2581, slip op. (E.D.Pa. April 18, 1988):

zealous advocacy may be inconsistent with an attorney's obligation as an officer of the court. The interests of justice, preservation of the resources of the court and parties, and the smooth functioning of our court system must be con-

---

**6.** While plaintiff's counsel expressed concern that action taken by the court in this case could have a "chilling effect" on counsel's representation in pro bono cases in the future, that does not give counsel the license to abuse the court system.

**7.** Pursuant to Local Rule 24(f) and consistent with the serious obligation imposed by the rule, "the certification should contain an affidavit of counsel *stating with specificity what actions were taken to resolve the dispute."* (emphasis added) *Pioneer Liemel Fabrics, Inc. v. Paul Rothman Industries, Ltd,* No. 87–2581, slip op. at 1, 1988 WL 36343 (E.D.Pa. April 18, 1988) (Shapiro, J.). Thus, Local Rule 24(f) imposes a substantial obligation on counsel to resolve discovery problems before bringing them to the attention of the court. *Id. See also Crown Cork & Seal Co. v. Chemed Corp.,* 101 F.R.D. 105, 106–07 (E.D.Pa.1984).

sidered. Confrontational posturing and "hardball" litigation strategies are inconsistent with counsel's obligations under the Federal Rules of Civil Procedure to bring litigation to a speedy and inexpensive resolution.

*Id.* As a result of counsel's unprofessional conduct in this case, there has resulted disputes that have increased costs to the City, have unquestionably required of the court an unnecessary expenditure of time, and have not materially advanced the resolution of the merits of this case. *See Dondi Properties Corporation v. Commerce Savings & Loan Assoc.*, 121 F.R.D. 284 (N.D.Tex.1988). In a recent decision, the court in *Veliz v. Crown Lift Trucks*, 714 F.Supp. 49 (E.D.N.Y.1989) stated:

> The difficult task of ensuring fundamental fairness as a presiding judicial officer and maintaining the dignity of court proceedings must be reconciled with the regrettable need to police some attorneys' behavior. It is an unpleasant endeavor with valuable time forever lost watching lawyer pitted against lawyer in satellite litigation over sanctions, far removed from the merits of the underlying controversy. And, ever present is the abiding sense that the profession is not well served by these painful exercises that tax a demonstrably undernourished judicial system and divert energies and attention away from more deserving litigation.

*Id.* at 64. *See Hachikian v. Aslanian*, No. 85–264, slip op. (E.D.N.Y. Jan. 18, 1990).

Our system of justice can ill-afford to devote scarce resources to supervising matters that do not advance the resolution of the merits of a case; nor can justice long remain available to deserving litigants if the costs of litigation are fueled unnecessarily to the point of being prohibitive. *Dondi Properties Corp., supra.*

During the course of the conference held on March 15, 1990, Robert Heim, Esquire commented that the Dechert, Price, and Rhoads policy is generally to not seek fees in pro bono actions even where their client prevails. Mr. Heim stated, nonetheless,

that his firm had invested $260,000 worth of labor on this case.

The fact that counsel have spent so much money on these petty discovery disputes raises troubling questions in this court's mind that reach beyond the confines of this particular litigation. In little more than a year this United States Magistrate has been forced to intervene in discovery disputes in many cases involving enormous economic stakes. I have emerged from my contact with these matters with an uneasy sense that the discovery system in potentially large civil rights cases more than occasionally may be perverted into an arena for economic power plays—that parties use discovery tools (or cast their responses to discovery requests) not so much to learn what the facts are, but rather to muscle one another into attitudes conducive to favorable settlements. While I do not have sufficient evidence to make a fair judgment about whether the discovery process has been so perverted in this case, my fear that discovery has been distorted by economic combat in this type of litigation compels me to make it absolutely clear that it is irresponsible, unethical and unlawful to use discovery for the purpose of flexing economic muscle.

Nor has this unfortunate situation escaped the watchful eye of the Chancellor of the Philadelphia Bar Association, Arthur G. Raynes, who lamented in his Front Line column of *The Retainer*, March 21, 1990, page 2,

> For the present, I'm worried about the demise of professionalism and the wholesale abandonment of the profession itself by some of our own colleagues. And I'm starting to believe that there may be a relationship between these two trends. All of us have read about the crisis in professionalism. We're part of a profession that is scrambling to rediscover its very soul in a high-tech, ultra-competitive environment that all too often seems to be based on 2,500 billable hours.

█ The question now before the Court is whether or not the fact that Kathryn Connolly, Esquire was an associate who has obviously been guided by both Mr.

Heim and Mr. Magaziner, should provide her with an impervious shield behind which counsel can hide from her mistakes. Associates may not blindly follow commands of partners they know to be wrong. Rule 19 of our Local Rules requires that counsel not act negligently thereby proximately causing the filing or maintenance of frivolous or harrassing motions which unnecessarily multiplies the proceedings and results in an increase in the costs of litigation. Rule 19 requires a lawyer who elects to sign a paper to take responsibility for it, even if that responsibility is shared. Rule 19 does not speak in terms of associate and partner or lead and primary counsel; no distinction is made by the rule, nor may one legitimately be implied for different standards of conduct.

 No lawyer may disclaim responsibility for his/her own actions or for a paper bearing his/her name. When others are involved in misconduct with counsel, degrees of culpability may vary but ultimate responsibility does not. Counsel simply cannot delegate to others their own duty to act reasonably and to meet the professional mandates set forth in Rule 11, Rule 16 and Rule 19 of our Local Rules. The obligations imposed by law on attorneys do not fluctuate day to day or on a case by case basis. In the end, each member of the bar is an officer of the court. His or her first duty is not to the client or the senior partner, but to the administration of justice. *Coburn Optical Industries, Inc. v. Cilco*, 610 F.Supp. 656, 661 (M.D.N.C.1985). Before filing any motions and then pursuing them an attorney, by virtue of Rule 19, has an obligation to make certain that the motions not only possess a good faith basis in fact and law, which the six consolidated motions did not, but also must make certain that they are necessary and could not have been achieved through amicable discussions. This responsibility, among others, may not be passed blindly from one lawyer to another up the extensible chain of command, with each lawyer claiming it was not his or her job to ultimately review that motion. When a cause of action is pressed to trial and it is determined that the motions in

support of discovery have been filed or pursued in bad faith or without a reasonable basis in law or fact, all counsel involved in the processing and maintenance of the motions may be, in some degree, responsible. To hold otherwise would subvert the very essence of Rule 19 of our Local Rules. The doctrine of *respondeat superior* fails to absolve an associate or a partner from professional responsibility.

This memorandum thus concludes at this level a disappointing chapter in the handling of a simple but important civil rights suit wherein discovery should have been concluded by all parties at least one year ago. Pursuit of this seriously flawed and meritless undertaking has been a disservice to its purported objective—that compensation be awarded to plaintiff who allegedly underwent forcible rape inside a prison controlled by the defendants. The conduct of plaintiff's counsel which can only be described as egregious has eroded confidence in our judicial system. This United States Magistrate's personal disappointment is inconsequential. But the erosion of a confidence of the Court, as an institution, is a serious matter for both the Bench and Bar. No litigant, no lawyer, and no cause warrants a lack of courtesies in the presentation of a case, for such lack is corrosive to the court as an institution responsible for the dispensation of justice. Just as civility breeds civility, so does courtesy breed courtesy, and all who participate in our judicial system must exemplify such qualities. One has only to review the docket entries, the motions, and the deposition transcripts and record at Bar, notwithstanding their sterility, to perceive the predicate for the court's disappointment and the necessity for its orders entered herein.

It is perhaps fitting and even somewhat ironic that I conclude by calling the attention of all counsel to the decision of *Kramer v. City of Philadelphia*, 425 Pa. 472, 229 A.2d 875 (1967). The Supreme Court there reversed the court below and allowed a judgment by default to be entered against the City for failing to supply documents stipulated for production. The relevant and applicable portion of that opinion, how-

ever, dealt with counsel for appellants' conduct throughout the proceeding, with the court stating at 477, 229 A.2d 875:

> "Counsel for appellants[8] in the finest traditions of professional conduct gave every courtesy to the City. Canon 25 of the Canons of Professional Ethics requires that 'a lawyer should not ignore known customs or practice of the Bar of a particular Court even when the law permits without giving timely notice to the opposing counsel.' Such timely notice was given to and ignored by the City ..." (emphasis added).

The court is confident that, having been reminded of their professional obligation, counsel will be able to reach an amicable resolution to the pending discovery disputes, see Pioneer Liemel Fabrics, supra, and that efforts of all counsel involved can now be focused on the merits of this case.

An appropriate order follows.

## ORDER

AND NOW, this 26th day of March, 1990, in accordance with the foregoing memorandum, it is hereby ORDERED that the order to show cause why counsel fees and costs should not be assessed against Kathryn Connelly, Esquire and Fred T. Magaziner, Esquire pursuant to 28 U.S.C. § 1927, is VACATED.

Plaintiff's counsel named in the foregoing Memorandum are hereby REPRIMANDED for the reasons set forth pursuant to Local Rule 19(c) for the Eastern District of Pennsylvania.

## SUPPLEMENTAL MEMORANDUM

Once again the Court, in this highly charged Civil Rights matter, is confronted with another instance of overzealous advocacy on the part of an outstanding litigator from the Law Firm of Dechert, Price and Rhodes.

After the filing of this Court's March 26th Opinion and Order, the Court received the transcript of the conference and hearing held in Chambers on March 15, 1990 at which time Gordon W. Gerber, Esquire entered his appearance for Mr. Magaziner as well as Ms. Connelly. Mr. Gerber commenced a lengthy argument in defense of his clients' conduct at depositions and the filing of the sanctions motions, and in discussing the plaintiff's deposition which Mr. Magaziner was conducting in the underlying case, Mr. Gerber stated:

> "If you'll turn to the first pages, Your Honor, this deposition started by what seems to me to be a mentally-ill person, Mr. Williams[1], saying to Mr. Magaziner: Control your personality.
>
> You don't say hello.
>
> THE COURT: Do you really want to put on the record that he is mentally ill?
>
> MR. GERBER: I will put on the record that he has conducted himself in this deposition as though he has a real problem." (emphasis added) (Tr. 9–10).

Granted that the courts of Pennsylvania and elsewhere have recognized the general principle that the defamatory statements made by judges, parties, witnesses and attorneys during the course of judicial proceedings, are absolutely privileged and may not give rise to a cognizable legal claim, I am, nevertheless obliged to likewise note that this principle is subject to one limitation. Binder v. Triangle Publications, Inc., 442 Pa. 319, 275 A.2d 53 (1971); McLaughlin v. Copeland, 455 F.Supp. 749, 751 (D.Del.1978), affirmed without opinion, 595 F.2d 1213 (3d Cir.1979); 50 Am.Jur.2d Libel & Slander § 237; Annot. 23 A.L.R. 3d 1172, 1176 (1969), and cases cited therein. Besides being made in the course of a judicial proceeding, which this conference clearly was, the privileged statements must be relevant or pertinent to the case. Noting that the relevance requirement has been liberally construed, can it be said unequivocally that Mr. Gerber's statements have some connection to the subject matter of the pending action? I raise this question because it is not clear to this Court that the accusation that opposing counsel "seems to me to be a mentally ill person" is

---

8. Counsel for appellants was one Edwin E. Naythons, Esquire.

1. Ronald K.M. Williams is a member of the Local Bar in good standing.

pertinent to the judicial proceeding as to whether the three attorney respondents violated 19 of the Local Rules of the Eastern District of Pennsylvania in presenting to the Court vexatious motions which multiplied the proceedings as to increase unreasonably and vexatiously the costs thereof.

Moreover, such a statement as it relates to Mr. Williams may or may not constitute words defamatory in nature. *See Seip v. Deshler*, 170 Pa. 334, 32 A. 1032 (1895) (imputations of insanity are libelous *per se* ). *See also Montgomery v. New Era Printing Co.*, 229 Pa. 165, 78 A. 85 (1910) (any oral or written words which impute to an attorney at law the want of the requisite qualifications to practice law are actionable *per se* ); *Brame v. Diller*, 23 Lanc.Rev. 350 (1906); *Holland v. Flick*, 212 Pa. 201, 61 A. 828 (1905); *Price v. Conway*, 134 Pa. 340, 19 A. 687 (1890); *Bishop v. New York Times Co.*, 233 N.Y. 446, 135 N.E. 845 (1922); *Brunstein v. Almansi*, 71 N.Y.S.2d 802 (N.Y.Sup.1947) (a false accusation of insanity, mental imbalance or mental disease, is libelous *per se* ).

I write this memorandum with much regret because the Court does not desire to see the spawning of further satellite litigation stemming from this most contentious action. It is important for the Court to address this matter, however, since Mr. Williams was not present at the conference in view of his having terminated his services with the City Solicitor's Office prior to March 15, 1990. Furthermore, for the Court to remain silent about this particular incident could well be mistakenly construed as this Court's condoning the language utilized by Mr. Gerber.